Johnson, J.
1. The first error relied on is that a married woman cannot sue alone for an injury to her person.
At common law the rule was :
“ When an injury is committed to the person of- the wife during covertwre, by battery, slander, &c., the wife cannot sue alone in any case; and the husband and wife rrmst join if the action be brought for the personal suffering or injury to the wife, and in such case the declaration ought to conclude to their damage, and not to that of the husband alone; for the damage will survive to the wife if the husband die before they are recovered.” Chitty Plead. 73.
Since the adoption of the Code of Civil Procedure, we look to that, to determine who are proper parties to an action.
By section 28, as originally enacted, and as amended in 1880 (67 O. L. 111), and in 1874 (71 O. L. 47), and as it now is, when the action of a married woman concerns her sepa/rate property, she may sue and be sued alone.
Section 2 of the act of 1861 (S. & S. 389), as amended in 1871 (68 O. L. 48), made a radical change in the rights of married women, as to what constitutes her separate property.
*17 By these statutes, rights of action belonging to a woman at her marriage, or which may accrue to her during coverture, growing out of any violation of her personal rights, are declared to be her separate property.
A right of action for assault and battery is a right growing out of a violation of her personal rights, and therefore the separate property of the wife.
Hence, being her separate property, she may sue alone for the injury.
II. Bid the court err in sustaining a demurrer to the second and third defenses.
These defenses sought to impeach, in the court of common pleas, a duly-authenticated mandate of the judgment of the district court, sent down to the clerk of the former court, and filed and entered as a part of its records, by an allegation that the clause remanding the case was no part of the judgment of the district court, but was falsely and fraudulently added to the judgment after the district court adjourned.
This mandate imparted absolute verity, being in due form and properly authenticated. If the allegations were true, relief should be sought in the district court. That court had full authority, on a proper showing, to grant the relief. While the judgment of the district court, as appears by its records, stands unreversed or unmodified, its mandates to an inferior court founded thereon must be obeyed, and cannot be impeached in the lower court by contradicting the authenticated record of it.
III. By the amendment striking out the husband’s name, it is claimed that a new cause of action was commenced, which was barred by the statute of limitations.
The assault was committed August 30, 1872. This amendment was made June 22, 1873, so that, as a matter of fact, the legal point is not made by the record, as the amendment was made within one year from the time the cause of action accrued.
IY. On the trial the plaintiff being on the stand as a witness, was asked to state what effect, if any, the wound which *18 defendant had made had continuously ever since had, as to pain and suffering. An objection to this question was overruled, and the witness answered that when she did certain kinds of work, and after, it hurt her.
In answer, under like objection, to a question as to its effect on her general health, she said it injured her from general work, and when she does work her side hurts her.
To this question and answer the defendant objected.
It is claimed that evidence as to loss of general health was inadmissible, because there was no allegation of a permanent injury.
The petition alleges that the defendant maliciously assaulted her with a large knife, and cut, beat and wounded her, with intent to kill and murder. The prayer is for general damages.
In such cases, it is not necessary to aver specially any matters which are the legal and natural consequences of the tortious act. All such consequences, every man is presumed to anticipate. Therefore under the usual allegations of assault and battery, the plaintiff may give in evidence any facts showing damage, that naturally and necessarily result from the act complained of.
If, however, consequences result from the act, not necessarily flowing therefrom, the law does not imply damages therefrom, hence they should be alleged in order to recover therefor.
This necessity of pleading special damages, as distinguished from natural or direct damages resulting from the act, did not exist in the case at bar. The injury arose from a wound inflicted with a deadly weapon. It was calculated to inflict a permanent injury, and the plaintiff therefore might recover for all the immediate, natural and direct consequences of the act.
If the jury were satisfied the wound caused a permanent injury to the plaintiff, all the damages, whether temporary or permanent, are recoverable, without being specially alleged.
Y. The plaintiff, while still a witness, was asked by her counsel, what instructions her husband gave her, on the morning of *19 the day the assault was made, about keeping Mrs. Stevenson away from her house, and about how she should conduct herself that day.
She answered:
“ My husband told me not to go on her premises nor in her way, and if she came there to molest me again, or attack me, to take the old shot-gun and shoot her. I said I won’t do it, for I might kill her. He told me then to stay away and not go on the bank and keep her out of my yard, and if she offered to come there to take the old shot-gun and shoot her. I again said I won’t do it. I do not know that any one was present,” and, thereupon, said defendants objected to the admission of said testimony, which objection was overruled by the court, to all of which opinions, rulings and judgments of the court the defendants except.
This was clearly inadmissible. It was a communication between husband and wife when no one was present, directly reflecting on the question of who was the aggressor. One of the defenses was, that the plaintiff first assaulted the defendant, and that the latter acted in self-defense. This conversation between husband and wife, when the defendant was not present, was doubtless offered for the purpose of reflecting upon that issue. It tended to support the claim of the plaintiff that the assault was malicious, and that the plaintiff was not guilty of the first assault.
YI. The plaintiff further to maintain the issue on her part, placed Henry Oollings, an attorney at law, upon the stand, who was asked in chief, the following question :
Ques.—“ What would be a reasonable attorney fee for prosecuting a case of this character ?”
Ans.—“ A reasonable attorney fee in this ease—it having been heretofore tried twice, in the common pleas and in district court by petition in error—would be $250 to $300. In case reversal was brought about by error or want of skill on the part of plaintiff, the fee might be the other way.”
To this question and answer defendant excepted.
In Roberts v. Mason, 10 Ohio St. 277, it was held that in an action to recover damages for a tort, which involves the ingre, *20 clients of fraud, malice, or insult, a jury may go beyond the rule of mere compensation, and award exemplary or punitive damages, and that in such a case, they may, in their estimate of compensatory damages, take into consideration and include reasonable fees of counsel employed to prosecute the action.
• In that case, there was no evidence before the jury on the subject of counsel fees, and the learned judge remarks: “ nor do we think such evidence ought to have been given or received. But the fact that the plaintiff would necessarily be subjected to expenses of that kind was properly taken into consideration and allowed, as a circumstance in the case patent before them.”
Finney v. Smith, 31 Ohio St. 529, affirms the doctrine of the syllabus, in Roberts v: Mason, in holding that in cases involving the ingredients of fraud or malice, counsel fees are to be allowed as compensatory damages.
The settled doctrine in this State is that counsel fees, in cases of this class, may be an' item of compensation, which the jury may, in its discretion, allow.
In Roberts v. Mason there was no evidence as to the value of counsel fees, and the court say, “ nor do we think such evidence ought to have been given or received.” Counsel claim that this remark, although purporting to be the opinion of the whole court, is obiter merely.
In that case it was necessary, in order to sustain the judgment, to hold that the jury might, without evidence, allow counsel fees, and the reason why that was so is given by the court, namely, that the fact that the plaintiff had been subjected to this expense, was patent before them. This would be a sufficient reason for not proving the fact that counsel was employed, and had rendered services, because that is patent to ■ the j ury, yet it would hardly be a satisfactory reason why the value of those services should not be proven, as that is a fact not patent in the case. Still we think the opinion then expressed, that such evidence should not be received, rests upon sound principles, and correctly states the only rule practicable in the trial of such causes.
In Fairbanks v. Witter, 18 Wis. 287, it is said, that if *21 counsel fees are to be allowed by the jury, it must be on the principle that such fees are in the nature of expenses incurred, and therefore as compensation, rather than as a penalty, and this is the logical deduction from the cases of Roberts v. Mason, and Finney v. Smith, supra.
The able discussion of the question between Professor Green* leaf and Mr. Sedgwick as to the true rule of damages, in cases sounding in tort, or rather whether, in any case, punitive damages, as distinguished from compensation, could be allowed, turned at last, largely upon the legal meaning of those terms; that is, whether, when the elements of fraud, malice, &c., mingle in the controversy, the damages, which the jury may give, in addition to mere compensation or such as are generally allowed, was to be classified as compensation for the greater injury, or as a penalty. In this state we have in these cases, classified counsel fees as compensatory damages.
Counsel fees being in the nature of consequential, rather than special damages, fall within the general rule already cited that they are recoverable, without being pleaded.
The cardinal rule, that the evidence must be confined to the issue, requires that collateral issues, such as the value of counsel fees, in an action of tort, should be excluded.
If the plaintiff can present such an issue he cannot be limited as to the number of witnesses he may call, nor can the defendant be denied the right to call countei’-witnesses to the same question. The issue legally before the jury is thus perverted into a contest as to the value of the services of plaintiff’s counsel, in the very case they are trying. The counsel whose fees are the subject of controversy, necessarily labors to show the highest value, though in fact he may be under a contract for a fixed price, much less than he can prove; while opposing counsel may depreciate these services, by showing that the value fixed is excessive, and by showing want of professional skill in the management of the case. To illustrate the incongruous nature of this controversy, the case, at bar affords an apt illustration. The first judgment for the plaintiff was reversed by the district court. Should plaintiff recover for these services ? That depends on whether the reversal was occasioned by the *22 want of skill of liis counsel, or by a blunder of the court. These questions would be material and would open an unseemly controversy.
Again, such an allowance by the jury rests in their discretion. It does not depend on the value of such services, but on whether the case is one in which it may bé made. In allowing such fees the courts of this state have gone further than the courts of many other states, but in doing so, it was not intended to enlarge the issues to be tried by the jury. To permit such evidence would be to tender a verbal issue, on which each party would have the right to be heard, which was unknown at common law, and which would open a wide door to embarrassing and unpleasant controversy. It would in volve no question of fact material to the case, but would call for the professional opinion of experts in such matters, based upon controverted questions in the case. This would involve an inquiry into the ability of plaintiffs counsel, the value of his services and the degree of skill with which he is managing the case on trial. In the practical administration of justice, the evidence should be confined to the issue, otherwise the court would be led into a labyrinth of difficulties. In leaving this matter to the discretion of the jury under all the facts before them, without proof of this character, we only follow the analogy of the law in all such actions, where, without actual proof of the amount of damages, the jury may in their estimate allow such an amount as will be adequate for the injury under all the circumstances. Counsel fees are not to be allowed, as of course, though proved, when the plaintiff recovers, as is the case where special damages, such as surgeons’ services and expenses of nursing, &c., are claimed, but only as an item of estimated general damages to be included in the discretion of the jury.

Judgment reversed, and cause remanded.